IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRUCE CLEMENT PENNINGTON, JR.,

            Plaintiff,

v.                                                            Case No. 17-1152-JWB

KANSAS UNIVERSITY MEDICAL CENTER
RESEARCH INSTITUTE, INC., *et al.*,

            Defendants.

## MEMORANDUM AND ORDER

Plaintiff filed this action against a multitude of defendants alleging that medical devices

were implanted in him without his knowledge. The court previously dismissed a number of claims

and defendants. The matter is now before the court on the following:

> (1) Defendant Medtronic PLC's Motion to Dismiss and Brief (Docs. 26, 27);
> Plaintiff's Response (Doc. 35);
> Medtronic PLC's Reply (Doc. 40); and
> Medtronic PLC's Motion to Strike (Doc.38);
>
> (2) Defendant Wesley Hospital's Motion to Dismiss and Brief (Docs. 28, 29);
> Plaintiff's Response (Doc. 36); and
> Wesley's Reply (Doc. 41);
>
> (3) Defendants Gray-Little, *et al.*, Motion to Dismiss (Doc. 30);
> Plaintiff's Response (Doc. 37); and
> Defendants' Reply (Doc. 42).

### I. Background

Plaintiff's *pro se* complaint contains difficult-to-decipher allegations. Among other things,

it alleges that Dr. Bruce Albright, a cranial and facial surgeon in Hutchinson, Kansas, claimed that

Plaintiff owed him $2,500. After Plaintiff refused to pay, Dr. Tony Wilbeck, a friend of Albright's,

allegedly showed up at Plaintiff's house and said he was there to negotiate on Albright's behalf

and to offer Plaintiff a "chance to either be driven insane or 'make millions.'" (Doc. 1 at 10.) Wilbeck allegedly told Plaintiff "they could have their research friends stick devices in me and anyone I loved and that I and my woman would end up dead or in an institution." (*Id.*). When Plaintiff got mad, Wilbeck allegedly offered him a chance to get rich by investing $100,000 with Wilbeck and Albright in a KU Medical Center research study. Plaintiff "told him to get out." (*Id.*).

Plaintiff alleges that at 12:30 a.m. on June 30, 2015, "several men in KUMC scrubs" and several firefighters "invaded our home" while Plaintiff and his family were sleeping, and when Plaintiff resisted they stuck a needle in his arm and injected something that caused him to pass out. (*Id.* at 11-12.) Plaintiff alleges his home was robbed of numerous items, including "over $100,000 in tools" and "10 vehicles worth over $100,000," and $20,000 was charged to an account in his name. (*Id.* at 13-14.)

Plaintiff alleges that the Kansas University Medical Center Research Institute ("KUMCRI") and others "have been working with Medtronic Inc. on a series of Research studies called the Medtronic Bio Initiative, the Obama Brain Initiative," and other initiatives, which involve "manipulation and altering of the human mind using frequency based and milla amp [sic] stimulation of the Human Brain." These studies are allegedly "practiced and taught by the Defendants on unwilling and … unaware victims" including Plaintiff. (*Id.* at 15-16). Plaintiff considers these surgeries to be "assault with deadly weapons, Rape, Terrorism, torture and [trafficking] in Human flesh." (*Id.* at 13.)

Plaintiff alleges that numerous "medical [telemetric] and [neurological] prosthetic Devices [have been] implanted in" he and his family by Dr. Albright and his KU Med Center Research "associates … via unauthorized/illegal surgeries." (*Id.* at 17.) The devices use radio waves to broadcast personal data about Plaintiff. Plaintiff also alleges that, without consent or need, he has

been implanted with cochlear electrodes for brain mapping and stimulation, as well as other devices, and "Defendants continued causing injury and pain … using over stimulation of the Cochlear electrodes to induce pain" and other effects. (*Id*. at 19.) He alleges the defendants "continued stalking [him]" to Colorado "using mental manipulation and medical radio communication to attempt to induce psychosis and [permanent] harm…." (*Id*. at 20.)

Plaintiff alleges he and other family members "are incarcerated due to lies and manipulation and Retaliation of the Defendants." (*Id*. at 21.) He further alleges that KUMCRI employees harassed him after the birth of his daughter at Wesley Medical Center, making him leave the hospital at gun point by armed guards after a nurse claimed she felt scared. He alleges that after his daughter was released, she had a small protrusion on the back of her head that was not there when she was born. (*Id*. at 22.)

The complaint alleges that defendant Bernadette Gray-Little is the "Chancellor of Kansas University Medical Center Research," that defendant Dr. Gregory Kopf is the Associate Vice Chancellor, that defendant Paul Tarranova is a Vice Chancellor, and that they are all responsible for the actions of KUMCRI. (Doc. 1 at 7-8.) The complaint identifies "Medtronic Public Limited Company" as a defendant (Doc. 1 at 2), although it mentions "Medtronic, Inc." in one allegation, and it generally refers simply to "Medtronic." Plaintiff asks for $2 million in compensatory damages and $500 million in punitive damages against each defendant. (*Id*. at 30.)

Magistrate Judge Gale previously granted Plaintiff's motion to proceed *in forma pauperis*, but recommended dismissal of a number of defendants and claims. (Doc. 10.) Judge Melgren adopted the recommendation. (Doc. 12.) The court thereby dismissed Plaintiff's claims for assault, kidnapping, robbery, torture, theft of intellectual property, and violation of religious rights (Doc. 10 at 18.) It also dismissed approximately thirty defendants named in the complaint. The order did

not dismiss Plaintiff's claims for violation of the Electronic Communications Privacy Act ("ECPA") and violation of the "right to equality," and it identified the following defendants as remaining in the suit: Dr. Albright, Dr. Gray-Little, Dr. Kopf, and Dr. Tarranova (all in their official capacities); KUMCRI; Medtronic Public Limited Company; and Wesley Hospital. (Doc. 10 at 18-19.)

**II. Motions to Dismiss**

1. <u>Medtronic Public Limited Company</u> (Doc. 26.)

Medtronic Public Limited Company ("Medtronic PLC") argues it is entitled to dismissal for three reasons: (1) Plaintiff's service of process was insufficient and untimely because Medtronic PLC is an Irish holding company and must be served in Ireland in accordance with Hague Convention requirements; (2) the court lacks personal jurisdiction over Medtronic PLC; and (3) Plaintiff's complaint fails to state a claim upon which relief can be granted. The court agrees with the second argument—that personal jurisdiction over Medtronic PLC is lacking—and therefore does not address the other arguments.

Medtronic PLC has submitted a declaration by Anne Ziebell, the Assistant Secretary of Medtronic, Inc., who states that she is familiar with the corporate structure of Medtronic PLC, the defendant named in the complaint. (Doc. 27-2.) Ziebell states that Medtronic plc is a holding company organized under the laws of Ireland, with its headquarters in Dublin, Ireland; that it has no presence in Kansas and does not solicit sales in Kansas; that it does not offer services for sale in Kansas and has no office, mailing address, or property in Kansas; that it does not have employees in Kansas and has never registered to do business or transacted business in Kansas; and that it did not design, market, or sell the devices at issue because it does not engage in such conduct.

Ziebell states that Medtronic plc is the ultimate parent company of Medtronic, Inc. (The latter is presumably the company that does engage in the design, marketing, and sale of these devices).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *TH Agriculture & Nutrition, LLC v. Ace European Group, Ltd.*, 488 F.3d 1282, 1286-87 (10th Cir. 2007). Because the Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process, the court ordinarily proceeds directly to the constitutional issue. *Id.* at 1287 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1087 (10th Cir. 1998)). In order for a court to exercise personal jurisdiction under the Due Process Clause, a defendant must have "minimum contacts" with the forum state, "such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Nonresident defendants may possess the requisite minimum contacts either under general or specific jurisdiction. General jurisdiction is "based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state." *Id.* at 1078. Specific jurisdiction exists if the defendant has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations omitted); *See Mitchell v. BancFirst*, No. 17-2036, 2018 WL 338217, at *2 (D. Kan. Jan. 9, 2018).

Plaintiff's response to the motion asserts that jurisdiction is proper because "Medtronics has over 100 sales representatives in Wichita, Kansas and Kansas City" and has "partnered with

University of Kansas Medical Researchers" on the Obama Brain Initiative and Medtronic Neuroscience Initiative. (Doc. 35 at 2-3).

Plaintiff has the burden of proving jurisdiction exists, although at this stage all factual disputes are resolved in his favor and he need only make a *prima facie* showing. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). But Plaintiff's response is nevertheless inadequate to meet this burden, because it draws no distinction between Medtronic PLC—the defendant at issue—and Medtronic, Inc. According to the uncontroverted sworn testimony before the court, Medtronic PLC is the parent company of Medtronic, Inc., and is merely a holding company with no contacts with the State of Kansas. "For purposes of personal jurisdiction, 'a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.'" *Good v. Fuji Fire & Marine, Ins. Co.*, 271 F. App'x 756, 759 (10th Cir. 2008) (quoting *Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1362 (10th Cir. 1974) and citing *Benton v. Cameco Corp.,* 375 F.3d 1070, 1081 (10th Cir. 2004)). Plaintiff fails to allege any circumstances that could justify disregarding the corporate entity or exercising jurisdiction over Medtronic PLC in this forum. *Cf. Pro Axess, Inc. v. Orlux Distribution, Inc.* 428 F.3d 1270, 1278 (10th Cir. 2005) ("Companies conducting business through their subsidiaries can qualify as transacting business in a state [for purposes of specific personal jurisdiction], provided the parent exercises sufficient control over the subsidiary."). Medtronic plc's motion to dismiss must therefore be granted. In light of this finding, Medtronic plc's motion to strike Plaintiff's response (Doc. 38) is denied as moot.

    2. <u>Wesley Hospital's Motion to Dismiss</u> (Doc. 28.)

Wesley Hospital ("Wesley") argues that Plaintiff failed to timely serve it with the complaint, contrary to Rule 4(m) of the Federal Rules of Civil Procedure, and that the complaint fails to state a valid claim for relief against Wesley. (Doc. 29 at 6-11.) In response, Plaintiff states that he does not object to dismissal. In fact, he wants to dismiss the complaint against Wesley because he intends to bring a separate action against it. (Doc. 36 at 1.) The court will grant the motion to dismiss as uncontested and, given the essentially voluntary nature of the dismissal and the lack of legal prejudice to the Defendant, will order that the dismissal be without prejudice. *Cf. Cummings v. Pearson*, No. 02-4167-JAR, 2003 WL 272173, *2 (D. Kan. Feb. 5, 2003) (voluntary dismissal ordinarily granted without conditions absent legal prejudice).

3. Motion to Dismiss of Bernadette Gray-Little, Greg Kopf, Paul Tarranova, and University of Kansas Medical Center Research Institute (Doc. 30).

These defendants argue they are entitled to dismissal because: (1) service of process was insufficient; (2) the complaint fails to state a valid claim for relief against these defendants; and (3) the official capacity claims against the named individuals are duplicative of the claims against KUMCRI. (Doc. 30 at 6-9.) Because the court agrees with the second argument, it grants the motion to dismiss on that basis and does not address the other arguments.

"To survive a motion to dismiss, a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1106–07 (10th Cir. 2016), *cert. denied sub nom. Lockett v. Fallin*, 137 S. Ct. 2298 (2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the court must accept as true all well-pleaded allegations and view those allegations in the

7

light most favorable to the non-moving party. *See Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Moreover, "[t]he tenet that a court must accept as true all of the allegations contained a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. *See Nolan-Bey v. Wickham Glass, Inc*., No. 17-1196-JTM, 2017 WL 5889760, at *2 (D. Kan. Nov. 29, 2017), *aff'd*, 714 F. App'x 915 (10th Cir. 2018).

The complaint purports to state two remaining claims: a violation of the ECPA and deprivation of the "right to equality" under 42 U.S.C. § 1983. Neither of these satisfies the *Twombly* standard for a plausible claim.

The ECPA provides in part that a person whose wire or electronic communication is intercepted, disclosed, or used in violation of Chapter 119 of Title 18, U.S. Code, may recover damages in a civil action against the person or entity that engaged in the violation. 18 U.S.C. § 2520. The Act prohibits various actions, including intentionally intercepting wire or electronic communications. 18 U.S.C. § 2511. "Electronic communication" means, in part, any transfer of data by radio or electromagnetic system that affects interstate or foreign commerce. 18 U.S.C. § 2510(12).

Plaintiff's ECPA claim alleges in part that "Defendants violated the Plaintiffs right to privacy" guaranteed by the Act, and notes that the Act prohibits interception, use, or disclosure of electronic transmissions. (Doc. 1 at 26.) But the complaint repeatedly refers only to "Defendants,"

and fails to identify any particular defendant who has violated Plaintiff's rights under the ECPA. It also alleges vaguely that "The Plaintiffs"[1] have "various" medical devices "implanted in them by Dr. Bruce Albright and his K.U.M.C./K.U.M.C.R.I. Associates," "many" of which broadcast personal data "about the Plaintiffs'" lives via radio waves. Leaving aside other questions, including whether Plaintiff plausibly alleges that a device was implanted in him personally, nothing is alleged to show that such a radio system affects interstate or foreign commerce. Nor does the complaint identify any prohibited act of intentional interception, disclosure, or use of an electronic communication, by a named defendant. *See Hamilton Group Funding, Inc. v. Basel*, ___F.Supp.3d ___, 2018 WL 1788161, *6 (S.D. Fla., Apr. 12, 2018) (elements of an ECPA claim include intentional interception of the contents of an electronic communication). For all of the foregoing reasons, the complaint fails to state a valid claim under the ECPA.

Plaintiff's § 1983 claim for deprivation of a "right to equality" similarly fails. The claim alleges that "Defendants showed prejudice" by selecting Plaintiff and his family. (Doc. 1. at 27.) The complaint does not make clear what Plaintiff was selected for, but assuming it refers to some sort of research trial, and further assuming that this activity constitutes state action, it fails to say how Plaintiff was deprived of a federal right in connection with that selection. To assert a viable claim for deprivation of the right to equal protection of the laws, a plaintiff must first make a threshold showing that the state treated him differently than others who were similarly situated. *Carney v. Okla. Dept. of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)). Plaintiff fails to allege any facts showing how he was treated differently than others similarly situated. Nor does he allege membership in a

---

[1] The *pro se* complaint listed various relatives of Bruce Pennington as plaintiffs in the case, and contained various allegations about them, but Judge Gale noted Mr. Pennington could not bring a *pro se* action on their behalf. Judge Gale accordingly stated the complaint would be treated as filed on behalf of Mr. Pennington alone. (Doc. 10 at 1, n.1).

suspect class, the violation of any fundamental right, or that Defendants' selection lacked any rational basis. *See e.g.*, *Wilson v. Wichita State Univ.*, 662 F. App'x 626, 629 (10th Cir. 2016) (absent membership in a suspect class or a burden on a fundamental right, the court applies rational basis review to Equal Protection claims). To state a valid claim for relief, Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555-56. Plaintiffs' allegations fail to meet that standard, and are therefore subject to dismissal.

### III. Conclusion

Defendant Medtronic PLC's Motion to Dismiss (Doc. 26) is GRANTED. The claims against this defendant are dismissed without prejudice for lack of personal jurisdiction. Medtronic PLC's Motion to Strike (Doc. 38) is DENIED as moot.

Defendant Wesley Hospital's Motion to Dismiss (Doc. 28) is GRANTED as uncontested. The dismissal of this claim is without prejudice.

The Motion to Dismiss (Doc. 30) of Defendants Gray-Little, Kopf, Tarranova, and Kansas University Medical Center Research Institute, Inc., is GRANTED. These claims are dismissed for failure to state a claim upon which relief can be granted.

The only remaining defendant in this matter is Dr. Bruce Albright, who was never served with the complaint. The court concludes pursuant to Fed. R. Civ. P. 4(m) that service has not been timely made on this defendant and Plaintiff has not shown good cause for the failure. *See* Doc. 51 (denying Plaintiff's motion for default judgment on January 22, 2018, because "Albright has never

been served."). The Clerk is accordingly directed to enter judgment reflecting the dismissal of all claims against all defendants.

IT IS SO ORDERED this 24th day of May, 2018.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE